*Law Library*

IN THE SUPERIOR COURT OF GUAM
TERRITORY OF GUAM

| | |
|---|---|
| DONG YANG CORPORATION,<br><br>            Plaintiff,<br><br>vs.<br><br>G.C. CORPORATION and GUAM RESORTS, INC.,<br><br>            Defendants. | CIVIL CASE NOS.<br>CV0062-08/CV1491-07/CV137-08<br><br>**DECISION AND ORDER (MOTIONS FOR SUMMARY JUDGMENT)** |

GUAM RESORTS INC.,

            Plaintiff,

vs.

G.C. CORPORATION,

            Defendant.

GUAM RESORTS INC.,

            Plaintiff,

vs.

G.C. CORP. & DONG YANG CORP.,

            Defendants.

Plaintiff Dong Yang Corporation ("Dong Yang") and Defendant Guam Resort's Inc. ("GRI") requested that the HONORABLE ELIZABETH BARRETT-ANDERSON[1] cancel oral arguments and render a decision on the basis of the written materials for both Dong Yang's Motion for Summary Judgment ("Dong Yang's Motion") as well as GRI's Motion for Summary

---

[1] After the time the Motions for Summary Judgment were taken under advisement, Judge Barrett-Anderson retired and became Judge *Pro Tempore.*

Judgment ("GRI's Motion"). CVR 7.1(e)(3). The Court having considered all the briefs and materials filed herein now renders the following decision.

## RELEVANT PROCEDURAL BACKGROUND

Dong Yang sued GRI in CV62-08 for foreclosure of its mechanic liens and GRI sued Dong Yang for Breach of Guaranty in CV137-08. A Complaint was filed in CV62-08 on January 22, 2008 and an Amended Complaint was filed on January 25, 2008. The parties were ordered into arbitration on May 9, 2008, but it was not successful. This case was consolidated for purposes of assignment to a single court with eleven (11) related cases by a January 13, 2009 Order. The consolidation of assignment did not consolidate all related cases for trial purposes. On June 1, 2009 and again on July 2, 2009, the parties requested that the bench trial in CV1491-07 and CV137-08[2] occur first before this Court made any determination between the parties in this case.

The Court held a bench trial in CV1491-07 and CV137-08 commencing on July 27, 2009; during which the Court heard testimony and received evidence[3] relating to all work of the Project[4]. *See Guam Resorts, Inc. v. G.C. Corp*, CV1491-07 & CV137-07 (Super. Ct. Guam Mar. 17, 2011)(hereinafter referred to as "March Findings"). *See also Guam Resorts, Inc. v. G.C. Corp*, CV1491-07 & CV137-07 (Super. Ct. Guam Dec. 29, 2010).

After issuing an initial Findings of Facts and Conclusions of Law in CV1491-07 and CV137-08, the Court issued trial dates for CV62-08 in a Scheduling Order dated July 2, 2010. The Court ordered pre-trial briefs to be submitted by both parties, and based on those briefs it became obvious to the parties and the Court that the issues were more a question of law rather

---

[2] The parties agreed that in CV137-08 GRI's claim against Dong Yang and Dong Yang's cross-claim against GCC for indemnification would be bifurcated, and those claims were not part of that trial.

[3] At the trial only GRI and GCC appeared; Dong Yang was not present or represented. *See e.g.* 6 GCA § 4213. However, the evidence is directly relevant to all subcontractors. *S.K. Construction Inc. et. al. v. G.C. Corp. and Guam Resorts, Inc.*, CV15-08 (Super. Ct. Guam Jan. 13, 2009)("Whereas these lawsuits involve the owner [GRI], the prime contractor [GCC], and a number of subcontractors and suppliers; and whereas it is in the interest of judicial economy that all of these cases be...handled together"). *See also* March Findings at II.H.1(b); 7 GCA § 33405 (2005).

[4] "Project" defined in *Guam Resorts, Inc. v. G.C. Corp.*, CV1491-07 & CV137-08, at II.B.2 (Super Ct. Guam Mar. 17, 2011).

than fact, and that the remaining issues should be decided pursuant to a motion for summary judgment, rather than a full trial. On the date of the originally scheduled trial, November 18, 2010, the Court provided a briefing schedule for the motions for summary judgment and provided continued trial date of February 4, 2011, if it was necessary[5]. Further, on November 18, 2010, GRI and Dong Yang stipulated seven (7) documents into evidence[6]. Lastly, the Court entered Judgment in favor of Dong Yang against Defendant G.C. Corporation ("GCC") on January 4, 2011[7], in the amount of $393,359.08, with interest thereon from August 30, 2007.

## RELEVANT FACTUAL BACKGROUND

GRI contracted with GCC to remodel part of GRI's hotel, Guam Hotel Okura[8], and construct additions on GRI's land. *See* GRI Compl., CV1491-07 ¶ 3.1 (Dec. 12, 2007); March Findings at II.D. GCC worked with many subcontractors on the Project, including Dong Yang. GCC and Dong Yang entered into a subcontract agreement relating to the Project on September 18, 2006 (hereinafter "Sub Contract"). Dong Yang Tr. Ex. 1. Dong Yang's mechanic's liens foreclosure claim relates to labor and materials and equipment use for the Project, most of which was done pursuant to the Sub Contract. GRI's claim does not explicitly relate to the Sub Contract.

The Sub Contract states in relevant part: "The Subcontractor assumes toward [GCC] all the same obligations, rights, duties and redress that [GCC] assumes toward [GRI] and the Architect/Engineer under the prime contract" (hereinafter referred to as "Liability Clause"). Dong Yang Tr. Ex. 1 at § 2.8. Further, the Sub Contract requires that Dong Yang indemnify GCC "[t]o the fullest extent permitted by law, ... to the same extent [GCC] is obligated to defend, indemnify and hold harmless [GRI]" (hereinafter referred to as "Indemnity Clause"). Dong Yang Tr. Ex. 1 at § 9.1. The Indemnity Clause is a general and broad indemnity contract

[5] No trial occurred in this matter.
[6] These documents will be referenced as "Dong Yang Tr. Ex.".
[7] Executed on December 30, 2011, but filed January 4, 2011.
[8] At times relevant for this lawsuit the Guam Hotel Okura, located at 185 Gun Beach Road, Tumuning, Guam 96913, is owned by GRI, and was operating under the name Aurora Resort.

requirement, with no limiting provisions. The Indemnity Clause is interpreted as especially broad when compared to the second indemnity clause in the Sub Contract, which provides that if the contract between GRI and GCC does not require indemnification Dong Yang will indemnify GRI and GCC against claims only relating to the Sub Contract work. Dong Yang Tr. Ex. 1 at § 9.2.

The contract between GRI and GCC executed on September 6, 2006 (hereinafter referred to as "Prime Contract") required:

> (1) In the event of default by a party, its guarantor shall be jointly and severally liable together with said party with respect to any monetary obligations arising under this Agreement.
> (2) If it becomes evidence that a guarantor is incapable of fulfilling said obligation, either party shall be entitled to request the other party to replace said guarantor.

Aff. of Mark Day in Supp. of GRI's Mot. For Summ. J., Ex. B[9] at Art. 8 (Dec. 6 2010)(hereinafter referred to as "Article 8 requirements"). The Sub Contract specifically references and incorporates the terms of the Prime Contract. Dong Yang Tr. Ex. 1. GCC presented Dong Yang as a potential guarantor and provided GRI a company profile for GRI to consent to Dong Yang being a guarantor. Aff. of Mark Day in Supp. of GRI's Mot. For Summ. J., ¶¶ 5-7 (Dec. 6, 2010)(hereinafter cited to as "Aff. of Mark Day"). *See also* March Findings at II.C.3(a); *But see* Decl. of Thomas M. Tarpley, Jr. in Supp. of Dong Yang's Opp'n to GRI's Mot. For Summ. J. and in Supp. of Dong Yang's Cross-Mot. For Summ. J., Depo. Transcript of Jimmy Jungsu Yi at p. 26 & Depo. Transcript of Kazuhiko Mori at p. 124-25 (Dec. 17, 2010). On September 24, 2006[10], Dong Yang's President signed a Japanese and an English document prepared by GRI that says in relevant part: "Based on article 8 of the Construction Agreement ('Construction Agreement') dated on September 6, 2006...the undersigned Guarantor shall be

---

[9] This is the same document as GCC Tr. Ex. BB referred to in March Findings.
[10] The document has the printed date of September 16, 2006, but the signature line and the affidavits indicate that it was signed on September 24, 2006.

jointly and severally liable for any monetary obligations in the Construction Agreement in the event of any default by [GCC]." Aff. of Mark Day, Ex. D[11](hereinafter referred to as "Guaranty Agreement"). 18 GCA § 31202. The Guaranty Agreement was executed after work on the Project commenced, but before any initial payment to GCC was paid by GRI under the terms of the Prime Contract. March Findings at II.B.4 and II.D.5.

GRI's Notice of Cessation was filed on November 23, 2007, at the Department of Land Management (hereinafter "Notice of Cessation"). Mot. To Dismiss Per Guam Civil Pro. Rules 12(b)(1) & 12(b)(6), Ex. C (Feb. 7, 2008). Dong Yang served preliminary notice of lien claim to GRI and GCC on November 9, 2007 and December 5, 2007. Mot. To Dismiss Per Guam Civil Pro. Rules 12(b)(1) & 12(b)(6), Exs. A & B (Feb. 7, 2008). Dong Yang's Claims of Lien were recorded by Thomas McKee Tarpley, Attorney for Dong Yang at Department of Land Management, Government of Guam on November 29, 2007, as Instrument No. 765117 (hereinafter "First Lien") and on January 2, 2008, as Instrument No. 766743 (hereinafter "Second Lien"). Decl. of Thomas M. Tarpley, Jr., Ex. 1 (Mar. 26, 2008); Aff. of Counsel, Ex. 2 (Mar. 23, 2009).

## RELEVANT DETERMINATIONS FROM TRIAL HELD IN CV1491-07 & CV137-08

The March Findings held that GCC breach the Prime Contract in the following ways: (a) GCC's bulk subcontracting, (b) billing for work not actually completed and materials not incorporated into the Project, (c) non-conforming work, (d) responding to change orders, and (e) subjecting the Guam Hotel Okura to mechanic's liens. March Findings at II.H.1, 4, 5, 8(a), 9; and III.H. Further, the March Findings held that GRI breached the Prime Contract in the following ways: (a) inaccurate application of Article 26(4) of the Prime Contract to the Payment Applications[12], and (b) responding to change orders. March Findings at II.H.6, 8(b); III.B, and III.C. The Court awarded the following damages to GCC: (a) $72,477.32 for *quantum meruit*

---

[11] This document was admitted to be a true, complete and correct copy of the document signed by Dong Yang's President on September 24, 2006. Aff. of Counsel in Supp. of GRI's Mot. For Summ. J. (Dec. 6, 2010).
[12] Defined in March Findings at II.D.6.

claims, and (b) $405,331.01 for equitable restitution for GRI's wrongful application of Article 26(4) of the Prime Contract to the Payment Applications. March Findings at IV.B.2 and IV.C. The Court awarded $303,349.20 to GRI as consequential damages relating to GCC's fraudulent misrepresentation. March Findings at IV.D.3.

Contrary to Dong Yang's assertions, the Court specifically found that GCC is not entitled to the 20% Retainage[13]. *Guam Resorts, Inc. v. G.C. Corp*, CV1491-07 & CV137-07 (Super. Ct. Guam Dec. 29, 2011). Further, the Court finds it significant that GCC was required to front the 20% Retainage under the terms of the Prime Contract, but GCC spent none of its own money to pay the subcontractors for their work. March Findings at II.H.1(f). Also of significance is the Court's finding that GRI's breach of the Prime Contract relating to Article 26(4) caused substantial financial difficulties in GCC's ability to complete the Project. March Findings at IV.C.5.

As summarized in the March Findings, the only subcontractor's mechanic's lien that was found valid and not dismissed by stipulation is Hawaiian Rock Products' in the amount of $215,796.16. March Findings at I.B; *Hawaiian Rock Products v. Guam Resorts, Inc.*, CV1474-07 (Super. Ct. Guam Dec. 10, 2010). Dong Yang's First and Second Lien are the only mechanic's liens on GRI's property still pending determination at this time.

## DISCUSSION

### A.    General Discussion Applicable to Both Motions.

The Court has jurisdiction to hear and determine the claims of these lawsuits pursuant to Title 7 Guam Code Annotated sections 3105 (2010). Summary judgment is appropriate if the pleadings and discovery documents in a case, along with affidavits, show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Guam R. Civ. P. 56(c); *Attorney General v. Perez*, 2008 Guam 16 ¶ 12. In order to defeat a motion for summary judgment, a non-moving party must come forth with sufficient

---

[13] Defined in March Findings at II.C.4.

evidence that a genuine issue of fact remains in dispute. *Id.* at ¶ 13. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Bank of Guam v. Flores*, 2004 Guam 25 ¶ 30(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986)). Whether a fact is material is determined by the governing substantive law; if the fact may affect the outcome, it is material, however, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Nonetheless, the burden is always on the moving party and the court must review the facts in the light most favorable to the non-moving party. *Iizuka Corporation v. Kawasho International (Guam), Inc.*, 1997 Guam 10 ¶ 8.

If a lack of evidence is established by the moving party, the non-moving party must present specific facts showing there is a genuine issue for trial. The non-moving party may not rely on conclusory allegations contained in the pleadings, but must present some significant probative evidence tending to support the assertions. *Edwards v. Pacific Fin. Corp.*, 2000 Guam 27 ¶ 7. Both parties concede that there are very few factual disputes remaining; both parties request this Court grant summary judgment based upon conflicting legal theories.

Both Dong Yang's Motion and GRI's Motion involve a determination of the validity of the Guaranty Agreement as well as an interpretation of 7 GCA §§ 33101, *et. seq.* (2005[14])(hereinafter "Mechanic's Lien Law"). The Court finds as a matter of law that the Guaranty Agreement is a valid contract. *See generally* 18 GCA § 87109. Guam's Supreme Court has stated that the test for interpreting the Mechanic's Lien Law is a plain reading construction if the law is clear on its face. *Castino v. G.C. Corp.*, 2010 Guam 3 ¶ 21. If the Mechanic's Lien Law is not clear on its face, then a "fair and reasonable interpretation" must be used. *Id.*

> In applying the "fair and reasonable" construction, the court must determine whether the lien claimant or property owner complied to some extent with the statutory requirements and whether such compliance is sufficient to constitute substantial compliance. The only "strict" part of

---

[14] Unless otherwise specified, all references to the Mechanic's Lien Law are to the 2005 version, and not the current version.

> this test is the requirement of having to comply (to some degree) with every statutory requirement, because there cannot be substantial compliance if there is no compliance at all; if one required element is omitted, then the court cannot determine whether the claimant has substantially complied with that requirement.

*Id. at* ¶ 30(quoted by *Core Tech Int'l v. Hanil Eng'g & Constr. Co.*, 2010 Guam 13 ¶ 19).

This Court has previously stated that GRI's Notice of Cessation was properly verified and found the Notice of Cessation meets all of the requirements of 7 GCA § 33302(g). *Conwood Products, Inc. v. Guam Resorts, Inc.*, CV1530-07, at 3 (Super. Ct. Guam Jun. 23, 2010); *Heidi Castino dba UNI-ARC v. G.C. Corp. and Guam Resorts, Inc.*, CV91-08 (Super. Ct. Guam Oct. 8, 2010); *Guam Resorts, Inc. v. G.C. Corp*, CV1491-07 (Super. Ct. Guam Oct. 13, 2010).

Guam's Supreme Court has declared that the verification necessary for documents referenced in the Mechanic's Lien Law does not need to be with a jurat acknowledgment or in accordance with 6 GCA § 4308 (2005). *Castino,* 2010 Guam 3. Thus, both the First Lien and the Second Lien were properly verified. Pursuant to 7 GCA § 33302(f) "every other person claiming the benefit of this Title must within thirty (30) days after the date of filing for record such notice, file for record his claim of lien." In order to claim benefit of the Mechanic's Lien Law, Dong Yang had thirty (30) days after GRI filed the Notice of Cessation to file a claim of lien. The First Lien was filed during November 2007, within the permissible thirty (30) days. Thus, Dong Yang's First Lien is timely. The Second Lien was filed during January 2008 and is untimely. *But see Dong Yang Corp. v. G.C. Corp.*, CV62-08 (Super. Ct. Guam May 9, 2008). For this reason, the Court finds Dong Yang cannot enforce its Second Lien. All further references in this Decision and Order to the enforcement of Dong Yang's mechanic's lien shall only be to the First Lien.

"'It has been stated that the lien laws are for the protection of the property owners as well as lien claimants and the laws relating to mechanics' liens result from the desire of the Legislature to adjust the respective rights of lien claimants with those of the owners of property improved by their labor and material.'" *Guam Pacific Enterprise, Inc. v. Guam Poresia*

*Corp.*, 2007 Guam 22 ¶ 13(citation omitted). It is regrettable that both parties potentially could lose substantial sums and/or legal rights due to legal nuances. Dong Yang stands to either lose their right to reimbursement for their labor and materials in the amount stated and/or could possibly be made to pay additionally for "any monetary liability in the Construction Agreement." Aff. of Mark Day, Ex. D. *See also* Liability Clause and Indemnity Clause. GRI stands to be forced to make a double payment for work and materials on the Project and/or lose their right to enforce a guaranty, which they relied upon throughout the Project.

### B.    Dong Yang's Motion.

Each of the seven (7) arguments[15] presented in Dong Yang's Motion are addressed below for purposes of thoroughness. First, Dong Yang advocates that if[16] the Court finds the Guaranty Agreement valid that the Court should then find the Guaranty Agreement has been exonerated for three (3) different reasons. Alternatively, Dong Yang maintains that if the Court finds the Guaranty Agreement valid, the Court should find that all of the subcontractor's mechanic's liens in the consolidated cases are not covered by the Guaranty Agreement. Next, Dong Yang argues that the Court should find that the Guaranty Agreement an unenforceable or invalid contract under Guam's laws. Lastly, Dong Yang claims that it is entitled to prejudgment interest on the amount it claims it is owed from GRI.

### 1.  Guaranty Agreement Was Exonerated By GRI's Actions Towards Subcontractors

Dong Yang argues that if the Court determines that the Guaranty Agreement is legally valid, it was exonerated by GRI's failure to pay the subcontractors. Dong Yang's primary argument is since GRI had retained[17] amounts from its payment of the Payment Applications, GRI should have used this money to pay the subcontractors on the Project and avoided all

---

[15] Dong Yang's Motion also includes an opposition argument titled "GRI's 'premature complaint' argument has already been rejected by this Court in two consolidated cases." This section is opposing an argument addressed in Part C1 below.

[16] The Court finds the Guaranty Agreement valid. Nonetheless, the Court uses the word "if" throughout section B when discussing the arguments stated in Dong Yang's Motion because that is the phrasing used by Dong Yang.

[17] The 20% Retainage issue is addressed in the March Findings.

mechanic's liens as well as this extensive litigation. The Court disagrees with this premise, especially considering the Court found several of the mechanic's liens to be invalid or contain invalid amounts; therefore GRI was under no legal obligation to pay many of the subcontractors who filed mechanic's liens. *See e.g. Guam Resorts, Inc.*, CV1491-07 (Super. Ct. Guam Oct. 13, 2010). Also of importance to Dong Yang's Motion is that the Court found that GCC is not entitled to the 20% Retainage, hence GRI is not under a legal obligation to pay this amount to another party. Dong Yang further claims that GRI can prove no damages suffered as a result of Dong Yang not paying under the Guaranty Agreement; however, GRI has suffered damages in the form of Hawaiian Rock Product Inc.'s mechanic's lien and attorney's fees[18] related to the litigation of the mechanic's liens. Lastly, Dong Yang argues that GRI failed to make reasonable attempts to mitigate its damages.

Dong Yang maintains the circumstance in this case is similar to the one described in *Mellon v. St. Louis Union Trust Co.*, 225 F. 693 (8th Cir. 1915). Dong Yang claims that since GRI

> owed the contractor[] more than the claims of the subcontractors amounted to, [GRI]... cannot refuse to pay these claims, and also refuse to pay the principal contractor[] the money due them, and which they would be required to use for paying off all other liens due under the contract. It is [GRI's] default that is the cause of [GCC]'s inability to pay the subcontractors, and one cannot, in a court of equity, plead his own default as a defense.

*Id.* at 704.

GRI argues that the Court should reject this reasoning for several reasons, including the counter-argument that even if GRI could afford to pay the subcontractors, this does not mean that it has a legal obligation to forgive the Guaranty Agreement and pay the subcontractors from GRI's funds. The Court agrees that the existence of a 20% Retainage amount does not exonerate the Guaranty Agreement. Furthermore, GRI does not owe GCC more than the total claims of all subcontractors of the Project. March Findings at IV. Additionally, this Court did not find that

---

[18] Attorney's fees relating to the mechanic's liens litigation are addressed and indirectly partially awarded in CV1491-07. March Findings at IV.D.

GRI's default was the only cause of GCC's inability to pay the subcontractors. *See* March Findings at II.H.1(f).

For the foregoing reasons, this Court finds that as a matter of law the Guaranty Agreement was not exonerated by GRI's actions towards subcontractors used on the Project. Therefore, the Court declines to grant summary judgment on this legal theory.

2. Guaranty Agreement Was Exonerated By GRI's Breaches of the Prime Contract

According to Dong Yang's argument, since the Court found that GRI breached the Prime Contract, GRI should be prohibited from: (a) using its default as an excuse for its failure to pay the subcontractors, and (b) enforcing the Guaranty Agreement. However, these arguments make many presumptions and characterizations about the March Findings, which do not represent the actual findings of this Court.

For clarification, the Court found that both GCC and GRI breached the Prime Contract. March Findings at III. Specifically for purposes of this argument, the Court found that GRI did breach the Prime Contract relating to payments under the terms of the agreement and further found that this breach caused financial difficulties on GCC's behalf relating to GCC paying the subcontractors. The Court also found that GCC breached the Prime Contract almost immediately upon signing the agreement and further found that GCC acted in bad faith when it failed to pay the subcontractors with its own funds.

Despite Dong Yang's claims, the Court did not find that GRI breached the agreement by wrongfully terminating the Prime Contract. The Court awarded damages to GCC based on GRI's breach relating to the Payment Applications. The Court did not find that GRI had breached the Prime Contract by not paying the subcontractors; in fact, the Court held that GCC breached the Prime Contract by not ensuring the Guam Hotel Okura was free of mechanic's liens. The remainder of Dong Yang's argument on this point simply repeats claims and citations discussed above in part B.1. above. For the reasons listed herein as well as the arguments addressed above, the Court disagrees that the Guaranty Agreement was exonerated by GRI's breaches of the Prime Contract.

Furthermore, GRI indicates that the positions advocated for the reconsideration issues in CV1491-07 and CV137-08 address Dong Yang's claim that the Guaranty Agreement was exonerated by GRI's breaches of the Prime Contract. The Court addressed GRI's arguments in its Decision and Order filed on December 29, 2011. *Guam Resorts, Inc. v. G.C. Corp*, CV1491-07 & CV137-08 (Super. Ct. Guam Dec. 29, 2011). The Court will not address these arguments again when deciding Dong Yang's Motion.

For the foregoing reasons, this Court finds that as a matter of law the Guaranty Agreement was not exonerated by GRI's breaches of the Prime Contract Therefore, the Court declines to grant summary judgment on this legal theory.

      3. Guaranty Agreement Was Exonerated by GRI Making Material Alterations to GCC's Obligations Under the Prime Contract

Dong Yang argues that there are only certain changes that could be made under the Prime Contract, and without specifying what changes, implies that GRI's changes to the scope of work were material alterations to GCC's obligations. Dong Yang concedes that work ordered by the fire department may be deemed necessary; however, this was work undertaken by GCC without GRI approval and therefore is not relevant to an analysis of changes of obligations under the Prime Contract. March Findings at II.G. Further, Dong Yang discusses that work done for archaeological mitigation may be deemed necessary, and therefore not a material alteration to the scope of work under the Prime Contract. March Findings at III.D.

The Court reviewed all of the evidence of the changes, reviewed the Prime Contract, and "conclude[d] that the numerous design changes, additional drawings, and/or change orders instigated by GRI do not amount to a breach of Contract by GRI." March Findings at III.A. The design plans for the Project were not complete at the time the Prime Contract was entered into; therefore most of the changes requested by GRI are not an alteration in any respect. *See generally* March Findings at II.H.2. Some of the changes requested by GRI were envisioned by the Prime Contract under the scope of design errors and unforeseeable interference with construction activities. Aff. of Mark Day, Ex. B at Art. 16, Misc. Special Items No. 4. In fact,

the Prime Contract specifies how change order requests would be addressed. Aff. of Mark Day, Ex. B at Arts. 28-29. The Court notes that the total amount of change orders approved by GRI, as of the date of suspension, is $797,600.69; which amounts to a thirty-eight percent (38%) of the value of the Prime Contract. March Findings at II.G.6; Aff. of Mark Day, Ex. B at p.1 ¶ 5[19].

When analyzing the issue of exoneration of a guaranty based upon an alteration, Guam's Supreme Court cited to cases where as little as a $315.00 change order, which was less than two percent (2%) of the total contract price, was a material alteration and warranted the exoneration of the guarantor. *Castro v. Peck*, 1998 Guam 2 ¶¶ 9-10. Unlike the facts in *Castro*, the Guaranty Agreement makes no provision relating to change order approvals or exoneration. *Id.* at ¶ 17. Further, unlike the property owner in *Castro*, GRI does not concede that the change orders are a material alteration to the Prime Contract. *Id.* at ¶ 6. However, this case is similar to *Castro* because there is no evidence that Dong Yang was provided with notification of the change orders and for the additional "necessary" work for the Project or their impact on the Guaranty Agreement. *Id.* at ¶¶ 3, 10.

Title 18 GCA § 31601 may exonerate Dong Yang as a guarantor only if the Court finds that the original obligation of GCC was altered in any respect. The plain language of the statute does not require a material modification; but the materiality has been put at issue by Guam's Supreme Court. *Castro*, 1998 Guam 2. This Court disagrees that a surety should be completely exonerated without review of any prejudice suffered because it creates a situation whereby obliges are without redress if a default occurs and any changes were necessary during the project, especially larger projects whereby it is normal in the course of work to have some major and/or minor changes. Nonetheless, the Court finds that collectively the changes in the scope of work, done pursuant to the terms of the Prime Contract as well as the additional necessary work that was not envisioned within the terms of the Prime Contract, materially altered the original obligation of both GCC and Dong Yang.

---

[19] See March Findings at fn 10.

This Court finds, based on Guam's statute and relevant case law, that the Guaranty Agreement is completely exonerated due to the changes in the scope of work that were not envisioned within the terms of the Prime Contract. Therefore, as a matter of law, the Guaranty Agreement is unenforceable and GRI is unable to collect any sums from Dong Yang pursuant to the agreement.

4. Payments of Mechanic's Lien Claims Are Outside the Scope of the Guaranty Agreement

Title 18 GCA § 31401 compels this Court to interpret the Guaranty Agreement as unconditional. Furthermore, pursuant to Guam law, under the Guaranty Agreement, Dong Yang was liable to GRI immediately upon GCC's default under the Prime Contract, even without GRI making a demand or notice. 7 GCA § 31402. Nonetheless, Dong Yang argues[20] that the Guaranty Agreement is limited only to GCC's monetary obligations, which does not include the obligation of GCC paying the subcontractors in order to keep the GRI's property free of mechanic's liens. Additionally Dong Yang disagrees with the Court's interpretation of the Prime Contract's provisions relating to third party damages. *See e.g.* March Findings at II.H.9. However, the Prime Contract is clear that "GCC owed a contractual duty to GRI not to subject any materials, equipment, or any subject matter of the construction to liens or cause them to become attached as security interests." Aff. of Mark Day, Ex. B at Art. 6(2). The only way for GCC to ensure that it did not breach its duty not to subject the Project to mechanic's liens was to pay all subcontractors and for all materials. 18 GCA § 85325. The Court will not reconsider its finding or interpretation of the Prime Contract on this point. Furthermore, pursuant to the plain language of the Guaranty Agreement, which references the liabilities included in the Prime Contract, the Court finds that the mechanic's liens claims are not outside the scope of the Guaranty Agreement. GCC's financial liabilities foreseeably included the possibility of

---

[20] GRI does not specifically address this argument in its opposition.

mechanic's liens being filed if materialmen and laborers were unpaid. For all of the reasons stated herein, the Court disagrees with this contention.

For the foregoing reasons, this Court finds that as a matter of law the payment of mechanic's lien claims are not outside the scope of the Guaranty Agreement. Therefore, the Court declines to grant summary judgment on this legal theory.

### 5. Guaranty Agreement is Unenforceable for Lack of Consideration

Dong Yang asks this Court to determine whether or not the Guaranty Agreement fails for a lack of consideration at the time of execution of the agreement. Guam law requires consideration for guaranty agreements to be distinct from the other contractual obligations if the guaranty and the other contract are not done at the same time. 18 GCA § 31201. Guam law also provides that it is a disputable presumption "that there was a good and sufficient consideration for a written contract." 6 GCA § 5107(39). Additionally, Guam law provides that accepting "the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." 18 GCA § 85325.

The dates that all of the relevant agreements were signed are important to this analysis. First, the Prime Contract was formally signed September 6, 2006[21]. Dong Yang's company profile was sent by GCC to GRI sometime prior to September 16, 2006. Aff. of Mark Day, ¶¶ 5-6. The Sub Contract was signed on September 18, 2006. GRI prepared a guaranty agreement to be signed and dated it September 16, 2006; but it was not formally signed until September 24, 2006.

Dong Yang contends that since the Sub Contract was executed on September 18, 2006 and the Guaranty Agreement was executed on September 24, 2006, independent consideration was required for the Guaranty Agreement to be enforceable. Dong Yang and GRI agree that no consideration between GRI and Dong Yang existed at the time the Guaranty Agreement was executed. The Court question presented to the Court is whether the Guaranty Agreement is

---

[21] The Court found that work on the Project commenced prior to this date. March Findings at II.B.4.

based on consideration of the original obligation between Dong Yang and GCC, or need there be "consideration distinct from that of the original obligation" between these Dong Yang and GCC. 18 GCA § 31201.

It is significant to the Court that Dong Yang's company profile was provided to GRI prior to the Sub Contract being executed, specifically because the Sub Contract "certifies that [Dong Yang] is familiar with all of the terms, conditions and obligation of the Contract Documents... ." Dong Yang Tr. Ex. 1. Further, as discussed above, the Sub Contract contains the Liability Clause and the Indemnity Clause that taken together show GCC and Dong Yang's intent to provide provisions whereby some or all of GCC's financial liability under the Prime Contract would be assigned to Dong Yang. Dong Yang Tr. Ex. 1. The Court determines that GRI was provided with Dong Yang's company profile for consideration as a guarantor and not for a different, unstated purpose. The Sub Contract does not require Dong Yang to provide GCC or GRI with financial information or any of the other extensive documentation included in the company profile. Dong Yang Tr. Ex. 1; Aff. of Mark Day, ¶ 5. The Court has evidence that GRI was not aware of how many or which companies were the subcontractors on the Project, including Dong Yang; furthermore, there is no other reason for GRI to prepare the Guarantee Agreement with Dong Yang's name included unless GRI believed that Dong Yang was being presented as a guarantor for the entire Project. Aff. of Mark Day, ¶ 8. The Court determines that Dong Yang knew it was being considered as a financial guarantor of the entire Project[22] at the time of providing its financial information to GCC and prior to signing the Sub Contract.

Hence, the Court finds there is sufficient evidence that Dong Yang and GCC discussed and bargained for the Guaranty Agreement, and that the consideration for the Guaranty Agreement consisted of the benefit of the transaction defined by the Sub Contract. The Court acknowledges that both documents were not executed on the same date; nevertheless, the Court finds that the six (6) calendar day difference is *de minimus*, and the execution of the Sub

---

[22] This determination is made regardless of Mr. Mori's involvement in the selection of a Guarantor for the Project and his deposition testimony that he didn't review anything about Dong Yang. Decl. of Thomas M. Tarpley, Jr. in Supp. of Dong Yang's Opp'n to GRI's Mot. For Summ. J. and in Supp. of Dong Yang's Cross-Mot. For Summ. J., p. 125, lns. 9-20 (Dec. 17, 2010). *See also* fn. 24.

Contract and Guaranty Agreement should be considered to be entered into contemporaneously for purposes of analysis of 18 GCA § 31201. The Sub Contract transaction is deemed to be consideration for the Guaranty Agreement. This finding is supported in light of the fact that after reviewing Dong Yang's company profile, GRI forwarded a draft guaranty agreement prior to the Sub Contract being executed; hence Dong Yang was aware, or should have been made aware, of the draft guaranty agreement prior to entering the Sub Contract. The Court was not presented evidence as to what caused the delay between the draft agreement being sent by GRI to GCC to the execution of the Guaranty Agreement or why the Guaranty Agreement was not signed until Mr. Day "was summoned to GC Corp.'s corporate headquarters to meet with the President of the guarantor corporation Dong Yang," since the Guaranty Agreement could have been signed without GRI's presence. Aff. of Mark Day, ¶ 7.

Moreover, GRI identifies persuasive California case law treatment of the California Code from which 18 GCA § 31201 is derived from, which bolsters the Court's finding. In California, "[t]he general rule that without additional security a surety is not bound by his signature made after the execution of the contract by the principals does not apply where the surety is procured in pursuance of a provision of the contract." *Pierce v. Wright*, 256 P.2d 1049, 1051-52 (Cal. Ct. App. 1953)(citations omitted). Thus, after reviewing California case law, no additional consideration is required for this Court to find the Guaranty Agreement enforceable since the agreement specifically references the terms of the Prime Contract.

For the foregoing reasons, this Court finds that as a matter of law that there was not a lack of consideration for the Guaranty Agreement. Therefore, the Court declines to grant summary judgment on the basis of this legal theory.

6. Guaranty Agreement is Invalid Due to a Mutual Mistake

Dong Yang claims the Guaranty Agreement is invalid because consent was not real or free as it was obtained through a mistake of fact occurred when the Guaranty Agreement was

signed[23]. 18 GCA §§ 85301, 85303(5), 85313. Dong Yang further argues that mutual consent, required for the formation of a contract, was not present because "the parties [did not] all agree upon the same thing in the same sense." 18 GCA § 85301. *See also* 18 GCA § 87106.

Mr. Mori negotiated the Prime Contract on behalf of GRI with GCC; but it was Mr. Day of GRI, and not Mr. Mori, who negotiated the Guaranty Agreement with GCC. It was also Mr. Day, and not Mr. Mori, who was present for Dong Yang's signature upon the Guaranty Agreement. March Findings at II.C; Aff. of Mark Day. Since Mr. Mori testified at a deposition that he wanted a guarantor to complete the construction in the event the prime contractor was unable to, Dong Yang argues that this means there was no meeting of the minds regarding the financial obligations Dong Yang allegedly undertook when signing the Guaranty Agreement. However, the Prime Contract and the Guaranty Agreement both use explicit language relating to guarantying financial obligations, and not completion of construction. As quoted in the March Findings,

> [s]ophisticated lawyers, such as those drafting standard forms to be used by the construction industry, must be presumed to know how to use parallel construction and identical wording to impart identical meaning when they intend to do so, and how to use different words and construction to establish distinctions in meaning. They must also be presumed to be familiar with standard maxims of contract construction, including the maxim *expression unium est exclusio alterius* (the expression of one thing is the exclusion of another).

*International Fidelity Insurance Company v. County of Rockland*, 98 F.Supp.2d 400, 412 - 13 (S.D.N.Y. 2000). As discussed in the March Findings, Mr. Tani of GRI, prepared the Prime Contract using a construction template, and did not account for Mr. Mori's desire regarding guarantying completion of construction. March Findings at II.C.5. There is no evidence that Mr. Mori instructed any of the parties of his unique understanding of the term "guarantor" as used in the Prime Contract. It is presumed by this Court that GRI and GCC understood the plain language of the Article 8 requirements, and this plain meaning was incorporated and agreed to

---

[23] GRI does not specifically address this argument in its opposition.

by Dong Yang upon signing the Guaranty Agreement. 18 GCA § 87104. The Court finds the language "liable for any monetary obligations in the Construction Agreement in the event of any default by the Contractor" to be clear and unambiguous. Aff. of Mark Day, Ex. D.

In this case, Dong Yang accepted the terms of the Sub Contract, including the payment terms. As previously stated, the Sub Contract incorporates the Prime Contract, but makes no specific reference to the Guaranty Agreement. Dong Yang failed to bolster its argument regarding mutual mistake and provide the Court with a logical explanation as to why Dong Yang provided its company profile to GRI[24], what mistaken belief it had when it signed the Guaranty Agreement, or why it "willingly accepted" the Guaranty Agreement. Decl. of Thomas M. Tarpley, Jr. in Supp. of Dong Yang's Opp'n to GRI's Mot. For Summ. J. and in Supp. of Dong Yang's Cross-Mot. For Summ. J., p. 26[25], lns. 11-13 (Dec. 17, 2010).

Dong Yang requests this Court consider parol evidence.

> The *Jegen* court relied on *Universal Sales Corp. v. Calif. Press Manufacturing Co.*, 128 P.2d 665 (Cal.1942), which articulated the rationale for considering both the parol evidence rule and surrounding circumstances: "[I]t is the duty of the court to give effect to the intention of the parties *where it is not wholly at variance with the correct legal interpretation of the terms* of the contract, and a practical construction placed by the parties upon the instrument is the best evidence of their intention." *Id.* at 672 (emphasis added). These decisions prohibit extrinsic evidence that would contradict the written agreement.

*Torres v. Torres*, 2005 Guam 22 ¶ 36. Evidence of Mr. Mori's intent does contradict the explicit terms of the written agreement. Thus, the Court rejects the use of parol evidence to make the language in the Guaranty Agreement unclear and ambiguous. Further, the Court finds as a matter of law the Guaranty Agreement language is clear and explicit. 18 GCA §§ 87104-

---

[24] The Court disbelieves the testimony of Mr. Yi relating to there being no discussions between himself and Dong Yang's president relating to the Guaranty Agreement prior to it being signed, because Dong Yang provided information prior to the Guaranty Agreement being executed. Decl. of Thomas M. Tarpley, Jr. in Supp. of Dong Yang's Opp'n to GRI's Mot. For Summ. J. and in Supp. of Dong Yang's Cross-Mot. For Summ. J., p. 26, lns. 11-13 (Dec. 17, 2010).

[25] There are no exhibit numbers provided to this declaration. p.26 refers to the Deposition Transcript of Jimmy Sungsu Yi.

105. "[T]he intent of the parties to a contract is generally, and whenever possible, restricted by the plain meaning of the contract terms. *See Camacho,* 1997 Guam 5 ¶ 33; 18 GCA § 87104 (2005)." *Wasson v. Berg,* 2007 Guam 16 ¶ 10. *See also Wasson,* 2007 Guam 16 ¶ 16. Based on this analysis, the Court finds the intent of both Dong Yang and GRI was to have a guarantor of the financial liability for the Project.

For the foregoing reasons, this Court finds that as a matter of law that the Guaranty Agreement is not invalidated by mutual mistake. Therefore, the Court declines to grant summary judgment on this legal theory.

### 7. Dong Yang is Entitled to Prejudgment Interest

Title 20 GCA § 2110 states

> [e]very person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him, upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by act of the creditor, from paying the debt.

Whether prejudgment interest is due under this statute on foreclosure of mechanic's liens is an issue that has previously been unaddressed by any courts on Guam.

Dong Yang argues that since GRI admits the liquidation amount claimed in the First Lien, it is entitled to interest of six percent (6%) from August 30, 2007. 18 GCA § 47106. On the other hand, GRI argues that since Dong Yang sued for foreclosure of a mechanic's lien, rather than money damages, Dong Yang is not entitled to prejudgment interest under the law. Further, GRI argues that because there was no contract between GRI and Dong Yang regarding the construction work on the Project, and therefore GRI had no common-law duty or obligation between the parties, GRI did not commit any "unlawful act or omission" to qualify Dong Yang to collect money damages from GRI. 20 GCA §§ 2101, 2111. The Court is not persuaded by any of the arguments made by the parties. Rather, the Court finds that based on the Mechanic's Lien Law in relation to the facts of this case, awarding prejudgment interest is not appropriate.

Section 33205 of the Mechanic's Lien Law states that the

liens shall not, in any case where the claimant was employed by a contractor or subcontractor, extend to any labor or materials not embraced within or covered by the original contract between the contractor and the owner, or any modification thereof...and which such contract or modification thereof the claimant shall have had actual notice before the performance of such labor or the furnishing of such materials.

For this Project, the Court has found that "[w]hile the parties [GRI & GCC] contracted to have excavation of the area completed, they did not contract for the specialized work and time related to archaeological excavations. March Findings at III.D. The Court granted GCC an award of damages in *quantum meriut*, specifically because the Court determined that the archaeological excavation work was not part of the scope of work defined in the Prime Contract.

The Sub Contract specifically incorporates the Prime Contract, thus Dong Yang had actual prior notice of it before commencing performance under of the Sub Contract. Dong Yang Tr. Ex. 1. Accordingly, pursuant to the Mechanic's Lien Law, the First Lien shall not include amounts for labor and materials not contemplated in the Prime Contract. Part of amount claimed in the First Lien was not contracted for, but instead done under the archeologist's direction. By comparing the Sub Contract with Dong Yang Trial Exhibits 2 and 4, it is obvious that $52,170.93 of the amount billed were not part of the Sub Contract. Dong Yang billed $52,170.93 as "force account", separate and distinct from the amount due under the terms of the Sub Contract. Furthermore, comparing the Sub Contract with Dong Yang Trial Exhibits 2, 4, and 5, it is obvious that the $55,046.00 billed separately for equipment was only necessary for the excavation done under the archeologist's direction; and not per the equipment necessary under the terms of the Sub Contract. Hence, only $286,142.15 out of the entire First Lien amount of $393,359.08 was contracted for. Consequently, pursuant to the Mechanic's Lien Law, the Court is restricted to awarding any foreclosure of the First Lien to the amount of $286,142.15, and not the entire $393,359.08, because it includes amounts for labor and materials "not covered by the original contract between the contractor and the owner." 7 GCA § 33205 (2005)[26].

---

[26] While not necessary to this opinion, the Court notes that the Legislature has seen fit to change the amount recoverable in mechanic's liens; hence Dong Yang would be unable to foreclose on the entirety of the First Lien under the current law. Title 7 GCA § 33102 (2012) states that the liens "shall be for the reasonable value of the

While not requested in this law suit, Dong Yang's claim is partially based on *quantum meriut*[27], rather than on purely subcontractor's contractual damages. Specifically, $107,216.93 of the amount claimed in the First Lien is an amount that was not readily ascertainable by GRI upon filing of the Complaint in CV62-08 because they could not have verified this amount under the terms of the Sub Contract. It was only after GRI stipulated to this amount and/or this Court's examination of the evidence that this amount was made certain of calculation. As a result of the amount of damages claimed being unable to be made readily ascertainable at the time of filing the Complaint, the Court finds it inappropriate to award prejudgment interest.

Interestingly, in Dong Yang's Motion, Dong Yang first cites to *Hardwood Interior Co. v. Bull*, 140 P. 702 (Cal. App. 1914) for the proposition that foreclosure of mechanic's lien claims are entitled to prejudgment interest. However, that case specifically found that no prejudgment interest is allowed on recovery when the amount of the mechanic's lien is not solely based on the terms of the fixed, definite, and agreed amount in the contract. *Id.* A second case cited to by Dong Yang finds similarly, that prejudgment interest is allowed on mechanic's liens based only on contractual amounts, because the amounts were capable of being made certain by calculation. *Klimm v. Henry Cowell Lime & Cement Co.*, 175 P. 908 (Cal. App. 1918)(citing *Hubbard v. Jurian*, 170 P. 1093, 1097 (Cal. App. 1917)). As explained above, the amount claimed in the First Lien was not based solely on the Sub Contract. Additionally, the amount claimed in the First Lien was not capable of being made certain by calculation at the time of commencement of this suit, based on the fact that the Court is legally unable to foreclose on the entire amount. 20 GCA § 2202. It is only after a trial in CV1491-07 and CV137-08 in addition to this Court's review of the evidence entered by stipulation that the value of the First Lien was made certain by calculation. Thus, even cases cited by Dong Yang support the proposition that prejudgment interest is inappropriate in this case. *See generally Associated*

labor, services, equipment, or materials furnished or for the price agreed upon by the claimant and the person with whom he or she contracted, whichever is less." Thus, under the Mechanic's Lien Law as well as the current law the Court is also be unable to award foreclosure of the entire amount claimed in the First Lien.

[27] The *quantum meriut* amount is the reason is why the Court is unable to allow foreclosure for the entire amount claimed in the First Lien.

*Wholesale Elec. Co. v. S.H. Kress & Co.*, 54 P.2d 38 (Cal. App. 1936); *Combs v. Eberhard*, 7 P.2d 338, 340 (Cal. App. 1932).

For the foregoing reasons, this Court finds that as a matter of law that Dong Yang is not entitled to prejudgment interest. The Court does not make a finding as to whether or not prejudgment interest is recoverable on mechanic's liens that are based solely on the price stated in the contract and the amount of damages claimed can be made readily ascertainable at the time of filing a complaint.

## C.     GRI's Motion.

GRI's Motion presents four (4) arguments that will each be addressed below for purposes of thoroughness. The first argument addressed below concerns the untimeliness of filing the Complaint in CV62-08 to enforce either of Dong Yang's mechanic's liens. The next three (3) arguments ask the Court to hold that the mere existence of the Guaranty Agreement is a reason to invalidate Dong Yang's First Lien. In opposition[28] of GRI's arguments pertaining to invalidating the First Lien, Dong Yang advocates that since the Guaranty Agreement is unenforceable[29], the Court should find the First Lien is valid, as if there had been no Guaranty Agreement. The Court disagrees that it should completely disregard the contract between the parties, which represents a voluntary affirmative act of Dong Yang. After addressing the ripeness of the Complaint filed in CV62-08, the Court will determine whether or not the existence of the Guaranty Agreement, regardless of its enforceability, impacts Dong Yang's legal right to recover sums from GRI.

1. Ripeness of Complaint Argument

Title 7 GCA § 33402(a) (2005) states:

---

[28] Unlike its opposition relating to the timeliness of its Complaint, Dong Yang does not present tailored opposition arguments to each of GRI's three (3) points.

[29] The Court found that Dong Yang was released from its monetary obligations to GRI based on the holding that there were material alterations in the scope of work defined in the Prime Contract. The Court rejected the majority of the reasons advocated by Dong Yang for exonerating the Guaranty Agreement.

> No action to enforce the payment of any claim, notice of which may be given pursuant to Article 2, shall be commenced against the owner prior to the expiration of the period within which claims of lien must be filed for record, as prescribed by this Chapter, nor shall any such suit be commenced later than ninety (90) days following the expiration of such period.

GRI argues that this section is a statute of repose or jurisdictional statute of limitation. A statute of repose extinguishes a cause of action or a legally recognized right, after a distinct period of time. *Footbridge Ltd. Trust v. Countrywide Financial Corp.*, 770 F.Supp.2d 618, 622 (S.D.N.Y. 2011). Further, a statute of repose can extinguish a cause of action even before it accrues. *P. Stolz Family P'ship v. Daum*, 355 F.3d 92, 103 (2d Cir. 2004).

Reading *Castino* and *Core Tech* as a whole, it is clear that the Supreme Court has determined that Guam's Legislature did not see fit to include jurisdictional components into the Mechanic's Lien Law, but has seen fit to ensure that materialmen and laborers get efficiently paid for their work. This Court will uphold "the principle that where the purpose of the requirement of the statute is achieved and no one is prejudiced, technical requirements shall not stand in the way of achieving the purpose of the mechanics' lien law." *Core Tech*, 2010 Guam 13 ¶ 48(internal quotations omitted). Further, this Court rejects the contention that section 33402(a) is jurisdictional in nature because as the Supreme Court said "if the statute was meant to have jurisdictional restrictions, it would have been written in such a way so as to indicate that intent. As such, the mechanics' lien statute clearly was not." *Castino*, 2010 Guam 3 ¶ 17. *See also Core Tech*, 2010 Guam 13 ¶ 36 (quoting *Castino*, 2010 Guam 3 ¶ 19).

Section 33402(a) includes mandatory timeframes compared to the permissive timeframes used in 7 GCA § 33302(a). 1 GCA § 715(9) (2005). However, the "mandatory timeframe" of section 33402(a) is ambiguous because the Mechanic's Lien Law provides numerous ways to calculate the "period within which claims of lien must be filed for record." 7 GCA § 33402(a) (2005). *See e.g.* CV15-08 Guam Resorts, Inc.'s Reply in Supp. of Mot. For Summ. J., at 1 (Aug. 3, 2010)("Plaintiffs were obliged to refrain from filing their lawsuit before January 30, 2008 … even if the Court were to account for GRI's Notice of Cessation [Plaintiffs' could not have filed before January 22, 2008]…by any estimation under applicable law."). *Cf.*

*Core Tech*, 2010 Guam 13 ¶ 42. GRI argues that Dong Yang filed its lawsuit one (1) day early when it commenced suit on January 22, 2008.

Further, section 33402(a) requirement is more analogous to the 150 day requirement of section 33302(c) and (d)(3) or the five (5) day service requirement of section 33402(b), which the Supreme Court has indicated will not divest this Court of jurisdiction.

Title 7 GCA § 33302(a) (2005) authorizes a subcontractor to record a claim of lien after they have completed their work or finished providing materials, but before expiration of the time allowances of this section of the Mechanic's Lien Law. As indicated above, Dong Yang's First Lien and Second Lien were filed after they had completed their work and furnished materials, but commenced "prior to the expiration of the period within which claims of lien must be filed for record" (hereinafter referred to as "Expiration Period"). 7 GCA § 33402(a) (2005).

The Mechanic's Lien Law, specifically sections 33402(a) and 33302(a), includes provisions that are ambiguous and create a possible conflict regarding periods of time for filing mechanic's liens and commencing an action to enforce the payment of a claim. Mechanic's liens are only valid for "ninety (90) days, unless ... proceedings to enforce the same be commenced." § 33403(a). Further, "no lien continues in force by reason of any agreement to give credit for a longer time than one (1) year from the time the work is completed." § 33403(a). Strictly construing section 33402(a) could potentially place subcontractors involved in a long-term "work of improvement"[30] at a severe economic disadvantage or otherwise make it impractical or impossible to foreclose on a mechanic's lien. For example, a subcontractor who completes their scope of work early in the multi-year project, and who files a mechanic's lien after completion of their work as permitted by the Mechanic's Lien Law, would either have their mechanic's lien declared invalid or be unable to foreclose on their mechanic's lien until after both the work of improvement was complete and the Expiration Period had passed. §§ 33402(a), 33403(a). There is also a concern that a subcontractor who completes their scope of

---

[30] Defined in 7 GCA § 33202 (2005).

work early in the multi-year work of improvement and files their mechanic's lien shortly thereafter is never notified of any notice of cessation being filed and therefore is unable to foreclose on their mechanic's lien entirely because the Expiration Period would be fundamentally different from what the subcontractor understood at the time of filing its mechanic's lien. Furthermore, a subcontractor may have to pay to refile their mechanic's lien several times prior to filing suit as well as legal fees to determine when their claim was ripe. *Cf. Dong Yang Corp. v. G.C. Corp.*, CV62-08 (Super. Ct. Guam May 9, 2008). This delay in subcontractor's relief for unpaid work and/or materials contradicts the legislative intent of the Mechanic's Lien Law. *Castino*, 2010 Guam 3 ¶ 49.

Since section 33402(a) is ambiguous, the Court must next determine if Dong Yang substantially complied with the Mechanic's Lien Law's requirements. *Id.* at ¶ 30. "Whether there is substantial compliance with a particular statutory requirement depends on the degree of non-compliance, the underlying policy of the requirement, and the prejudice the property owner or third parties may have suffered as a result of non-compliance." *Castino,* 2010 Guam 3 ¶ 40(internal citations omitted). In this case, Dong Yang's degree of non-compliance is filing on the same day as the last of the Expiration Period, or one (1) day early. The underlying policy of the Mechanic's Lien Law is summarized as "the legislative intent to provide a statutory remedy protecting laborers and materialmen, especially when the general purpose of the lien claim requirements … were met." *Id.* at ¶ 49. *See also Id.* at ¶ 52. The policy behind section 33402(a) is to prevent a property owner from facing multiple lawsuits from various subcontractors throughout the work of improvement because an owner may be unable to properly defend against the lawsuit(s), or so an owner may attempt to work things out with the prime contractor and/or other actions short of litigation so that the work of improvement can be completed. Thus, the first two (2) factors tilt toward finding the First Lien valid, rather than requiring strict compliance with 7 GCA § 33402(a). Regarding the third factor, the prejudice the property owner suffers as a result of non-compliance is minor for the following reasons: GRI was not facing a flurry of lawsuits during the ongoing work of improvement, GRI had notice for over forty (40) days that multiple mechanic's liens were placed on their property, and many other

lawsuits had been filed for this same Project so it was reasonable to expect that those other subcontractors with mechanic's liens would file suit, and the amount of time of prematurity is *de minimus* and not legally significant. *Core Tech*, 2010 Guam 13 ¶ 47. Regarding the prejudice a third party may have suffered as a result of non-compliance, these too are insignificant, if any. In this case, none of the subcontractors were able to foreclose their mechanic's liens prior to a subcontractor being able to file suit and miss an opportunity for profit from a foreclosure. Weighing all of these factors, the Court finds that Dong Yang substantially complied with the Mechanic's Lien Law. *S.K. Construction Inc., et. al. v. G.C. Corp. and Guam Resorts, Inc.*, CV15-08 (Super. Ct. Guam Nov. 5, 2010). "[T]his court would be hard pressed to find a legally significant distinction between notice served 14 days late (as in *McKee*) and notice served 22 days late [in *Core Tech*]" and a lawsuit filed one (1) day early in this case. *Core Tech*, 2010 Guam 13 ¶ 48. The Mechanic's Lien Law requirements were met even when this lawsuit was filed one (1) day early, because GRI is not adversely affected by the non-compliance. *Id.* at ¶ 47. For this reason; the Court is rejecting GRI's argument on the ripeness issue.

For the foregoing reasons, this Court finds that as a matter of law the lawsuit is ripe and the Court has jurisdiction over Dong Yang's claim. Therefore, the Court declines to grant summary judgment in favor of GRI on the basis of this legal theory.

2. Dong Yang Waived Its Right to Assert a Mechanic's Lien Argument

GRI argues that regardless of the validity of the Guaranty Agreement[31], the act of signing the Guaranty Agreement is a clear legal waiver of the right to enforce a mechanic's lien against the Guam Hotel Okura. GRI cites a number of cases that state a mechanic's lien may be impliedly waived. *Durant Const. Co. v. Gourley*, 336 N.W.2d 856, 858 (Mich. Ct. App. 1983)(the construction company in this case had signed an explicit waiver of mechanic lien; nevertheless, the court stated that waiver could be implied.). "'Waiver of mechanic's lien rights does not require a formal contract, but may be inferred from the circumstances and the conduct

---

[31] The Court found the Guaranty Agreement valid, but unenforceable. Nonetheless, the Court is using the phrasing used in GRI's Motion throughout section C.

of the parties.' (*E. K. Wood Lumber Co. v. Higgins, supra*, 54 Cal.2d at p. 94, 4 Cal.Rptr. at p. 525, 351 P.2d at p. 797; *see also Goodwin Tile & Brick Co. v. DeVries* (1944) 234 Iowa 566, 569, 13 N.W.2d 310, 155 A.L.R. 346; *Detroit Graphite Co. v. Carney* (1935) 175 Okl. 583, 53 P.2d 584, 586.)." *R. D. Reeder Lathing Co. v. Allen*, 425 P.2d 785, 788 (Cal. 1967). *Falls Savings & Loan Ass'n v. Brumit*, 161 N.E. 295 (Ohio Ct. App. 1983).

On Guam, "[w]aiver [of a legal right] can be shown by the 'affirmative acts of a party or by conduct that supports the conclusion that waiver was intended.'" *Guam Election Comm'n v. Responsible Choices For Adults Coalition*, 2007 Guam 20 ¶ 84(quoting *Guam Hous. & Urban Renewal Auth. v. Dongbu Ins. Co.*, 2001 Guam 24 ¶ 18). "It is not logically possible for Dong Yang to hold itself out as responsible for paying off any mechanic's liens created by G.C. Corporation's failure to pay subcontractors, and then at the same time file a mechanic's lien for a debt to Dong Yang that Dong Yang has agreed to cover." Guam Resorts, Inc. Mot. For Summ. J., at 9 (Dec. 6, 2010). *Gannon's Ex'rs v. Central Presbyterian Church of McKeesport*, 33 A. 1043 (Pa. 1896)("It is inconsistent that one who agrees to guaranty that there shall be no lawful claims for work or materials furnished to the original contractor shall himself be permitted to occupy such a position. He cannot be permitted to recover without violating his contract of suretyship, and he must therefore be held to have waived the right to file any lien in the face of his contract.").

While the Court agrees that the Guaranty Agreement is an affirmative act by Dong Yang that is inconsistent with filing the First Lien, the Court disagrees that signing the Guaranty Agreement supports the conclusion that Dong Yang intended to waive its right to file a mechanic's lien. *Guam Election Comm'n*, 2007 Guam 20 ¶ 84. *But see Carl Miller Lumber Co. v. Meyer et. al.*, 186 N.W. 840, 842 (Wis. 1924)("It is also true that a waiver may be implied from facts and conduct or agreement of the parties which are inconsistent with the right to file a lien and which manifest an intention to waive the right."). Signing the Guaranty Agreement may support a finding that Dong Yang implicitly waived its right to file a mechanic's lien, but the Court refuses to make this finding. Especially in light of Guam's Supreme Court holding that not all legal technicalities need be met to foreclose on a mechanic's lien, and has interpreted the

statute so as to validate imperfect mechanic's liens, the Court declines to hold that waiver of the right to foreclose on a mechanic's lien may be implied. *Castino*, 2010 Guam 13 ¶ 35. Further, the Court declines to determine whether the right to file a mechanic's lien may be explicitly waived under Guam law.

For the foregoing reasons, this Court finds that as a matter of law that the right of a materialmen and laborers to file a mechanic's lien under the Mechanic's Lien Law may not be waived implicitly. Therefore, the Court declines to grant summary judgment in favor of GRI on the basis of this legal theory.

### 3. Dong Yang is Equitably Estopped From Asserting a Mechanic's Lien Argument

GRI argues that 6 GCA § 5106(3) applies to the circumstances of this case and that the existence of the Guaranty Agreement should prevent Dong Yang from foreclosing on the First Lien. In Guam there are

> four elements that must be proven in an equitable estoppel analysis: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct will be acted upon, or act in such a manner that the party asserting the estoppel could reasonably believe that he intended his conduct to be acted upon; (3) the party asserting the estoppel must be ignorant of the true state of the facts; and (4) he must rely upon the conduct to his injury.

*Limtiaco v. Guam Fire Dept.*, 2007 Guam 10 ¶ 58(citing *Mobil Oil Guam, Inc. v. Young Ha Lee*, 2004 Guam 9 ¶ 24).

In this case, Dong Yang admits that it signed the Guaranty Agreement. The Guaranty Agreement explicitly created Dong Yang's monetary liability to GRI if GCC defaulted in its Prime Contract obligations. Until the first preliminary notice of lien claim was provided to GRI, Dong Yang did not revoke or take any actions that would make it unreasonable for GRI to rely upon the signed Guaranty Agreement. 18 GCA § 89204. Therefore, throughout the duration of the Project, including the time of GCC's suspension of work on the Project, the Court finds that Dong Yang acted in such a manner that GRI could reasonably believe that Dong Yang intended

the Guaranty Agreement to be legally enforceable and to be acted upon. Aff. of Mark Day, ¶¶ 9, 11-15[32]. Further, as indicated earlier, the Court finds that GRI was unaware that Dong Yang was a subcontractor and would file the First Lien as well as being unaware that Dong Yang would not honor its obligations of the Guaranty Agreement. Aff. of Mark Day, ¶ 8. Lastly, despite its right to do so under the Prime Contract, GRI did not secure a different guarantor for the Project due to its reliance upon the Guaranty Agreement. Aff. of Mark Day, ¶¶ 14-15; Article 8 requirements. The Court finds that all four (4) elements of estoppel are met in this circumstance.

"Estoppel to assert a lien may be inferred from the circumstances and from the conduct of the parties. (*R.D. Reeder Lathing Co. v. Allen* (1967) 66 Cal.2d 373, 378, 57 Cal.Rptr. 841, 425 P.2d 785 [mechanic's lien].)." *Islander Yachts, Inc. v. One Freeport 36' Vessel*, 219 Cal.Rptr. 654, 658 (Cal. Ct. App. 1985). In addition to the Liability Clause and the Indemnity Clause in the Sub Contract, Dong Yang signed an agreement that created a monetary liability to GRI that ensures that no materials, equipment, or any subject matter of the Project could be subjected to mechanic's liens or cause them to become attached as security interests. Aff. of Mark Day, Ex. B at Art. 6(2). Once any of the materials, equipment, or property became subjected to mechanic's liens, GCC breached its obligations under the Prime Contract. March Findings at II.H.9. Based upon this default and under the terms of the Guaranty Agreement, Dong Yang became jointly and severally liable to cure this default; meaning under the terms of the Guaranty Agreement, Dong Yang had a duty to pay the sums necessary to remove the mechanic's liens on GRI's property relating to the Project. Despite the unusual nature of these circumstances, Dong Yang was under a legal obligation to pay to remove its First Lien pursuant to the Guaranty Agreement. While the Court has found the Guaranty Agreement legally unenforceable heretofore, the circumstances of the above mentioned transactions and the overall conduct of the parties lead this Court to find that Dong Yang is estopped from asserting a mechanic's lien.

---

[32] There are two (2) paragraphs 14 in Aff. of Mark Day. The citation is to the first of the paragraphs numbered 14.

The Court differentiates estoppel from waiver on the basis of the necessity of equity and fairness for all parties involved. As indicated in GRI's Motion, waiver and estoppel are very similar.

> A waiver requires voluntary and international relinquishment of a known right or privilege. Estoppel arises apart from any intention on the part of the one estopped. Estoppel involves conduct by both parties, and prejudice is one of the essential elements of estoppel, while waiver depends upon what one party intended to do, regardless of the other party. ... [E]stoppel precludes the assertion of a mechanic's lien [in this case].

*Peterson Mechanical, Inc. v. Nereson*, 466 N.W.2d 586, 571 (N.D. 1991)(citations omitted).

While Guam's Supreme Court has allowed imperfect mechanic's liens to be foreclosed, and has protected the rights of those making claims pursuant to the Mechanic's Lien Law, at the same time Guam's Supreme Court also recognizes the rights and protections of the land owner under the Mechanic's Lien Law. *Guam Pacific Enterprise, Inc.*, 2007 Guam 22 ¶ 13. The Court declines to hold that the Mechanic's Lien Law completely protects the materialmen and laborers in a circumstance that the four (4) factors of equitable estoppel are met. As described above, applying equitable estoppel is appropriate to Dong Yang's foreclosure of the First Lien claim due to the promises Dong Yang made in the Guaranty Agreement and the prejudice GRI suffered as a result of its reliance upon the Guaranty Agreement.

For the foregoing reasons, this Court finds that as a matter of law that Dong Yang is equitably estopped from foreclosing on its First Lien. Therefore, the Court grants summary judgment in favor of GRI on the basis of this legal theory.

4. Dong Yang is Legally Barred From Asserting a Mechanic's Lien Argument

GRI argues if the Court found the Guaranty Agreement enforceable, then Dong Yang cannot legally assert a mechanic's lien against the same work of improvement it is guarantying. *Rynd v. Pittsburg Natatorium*, 33 A. 1041 (Pa. 1896); *Kent Lumber Co. v. Ward*, 79 P. 485 (Wash. 1905); *Handley v. Ward*, 70 Mo. App. 146 (Mo. Ct. App. 1897).

> In *Spears v. Lawrence*, 10 Wash. 368, 38 Pac. 1049, 45 Am.St.Rep. 789, the surety of the principal contractor claimed a lien on the property ...and it was held that, being a surety of the contractor, he could not recover. *McHenry v. Knickerbacker,* 128 Ind. 77, 27 N.E. 430, *Interior Woodwork Co. v. Prasser,* 108 Wis. 557, 84 N.W. 833, and *Aikens v.Frank,* 21 Mont. 192, 53 Pac. 538, like *Spears v. Lawrence,* are actions by the sureties of the principal contractor.

*Mellon,* 225 F. at 703. All of the above cited cases rely upon an enforceable surety or guaranty agreement. These cases are distinguished due to the fact that this Court found the Guaranty Agreement legally unenforceable. The Court is convinced that a subcontractor may be legally barred from asserting a mechanic's lien if it has a legally enforceable surety agreement for the work of improvement; but that is not the case here.

For the foregoing reasons, this Court finds that as a matter of law that Dong Yang is not legally barred from asserting its First Lien on the basis of a valid Guaranty Agreement, since there is not a legally enforceable guaranty agreement in this case. Therefore, the Court declines to grant summary judgment in favor of GRI on the basis of this legal theory.

//

//

//

## CONCLUSION

For the reasons stated herein, the Court GRANTS in part Dong Yang's Motion for Summary Judgment and finds the Guaranty Agreement unenforceable. The Court awards no recovery to GRI from Dong Yang. Further, the Court hereby GRANTS in part GRI's Motion for Summary Judgment and finds Dong Yang is equitably estopped from asserting a mechanic's lien. On the basis of equitable estoppel, the First Lien is hereby canceled. The Second Lien is also hereby canceled because it is untimely. The Court awards no recovery to Dong Yang from GRI. The American Rule, meaning each party must bear the expense of their own attorney's fees, applies in Guam. *Fleming v. Quigley*, 2003 Guam 4 ¶ 35. Both parties prevailed on significant issues in this case, thus attorney's fees should not be awarded. *See Fargo Pacific, Inc., v. Korando Corp.*, 2006 Guam 22 ¶ 53.

Judgment to be entered concurrently with this Decision.

**SO ORDERED** this 6th April 2012.

**HONORABLE ELIZABETH BARRETT- ANDERSON**
Judge *Pro Tempore*, Superior Court of Guam

I do hereby certify that the foregoing is a true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam.
Dated at Hagåtña, Guam

APR - 6 2012

Glenric J. Mendiola
Deputy Clerk, Superior Court of Guam